NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FRANCIS X. GARTLAND, | : | |
| | : | Civil Action No. 14-5039 (MAS) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

**SHIPP, District Judge**

Pro se Petitioner Francis X. Gartland has filed a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("Motion"), challenging a conviction and sentence imposed, pursuant to a guilty plea, by a retired judge of this District, the Honorable Joel A. Pisano, in *United States v. Ritacco*, No. 10-713, ECF No. 82 (D.N.J. entered Dec. 21, 2012), for his participation in schemes to defraud the public and the Internal Revenue Service. For the reasons stated below, the Court denies the Motion.

## I.    FACTUAL BACKGROUND

For the purposes of this Opinion, by way of background information, the Court relies on the following findings of fact by the Third Circuit on direct appeal regarding the circumstances of Petitioner's crimes:

> Gartland was an insurance broker who, between 1998 and 2010, paid bribes to Michael Ritacco, the superintendent of the Toms River Regional School District (School District). In return, Ritacco helped Gartland secure contracts to broker health insurance and workers' compensation coverage for the School District. Gartland then received commission fees and other kickbacks. As a result of this scheme and his subsequent efforts to hide the behavior from the

Internal Revenue Service, Gartland was indicted for honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346 and conspiracy to impede and impair the functions of the IRS in violation of 18 U.S.C. § 371.

In addition to his work for the School District, Gartland also was the insurance broker for the city of Perth Amboy, New Jersey and its board of education from 2001 to 2009. In 2005 and 2006, Gartland and coconspirator Thomas O'Leary engaged in an election fraud scheme to recruit straw contributors for the congressional campaign of Joseph Vas, who was Mayor of Perth Amboy at that time. Gartland and O'Leary would recruit individuals to contribute directly to Vas's campaign and then Gartland or O'Leary would reimburse them for the donation. This scheme funneled approximately $30,700 in illegal contributions to Vas's campaign. Gartland was charged with conspiracy to violate the Federal Election Campaign Act in violation of 18 U.S.C. § 371.

*United States v. Gartland*, No. 13-1062, slip op. at 2 (3d Cir. Sept. 26, 2013). (ECF No. 12-13.)

During pretrial, in support of a motion to sever his case from the codefendant Ritacco, Petitioner filed an affidavit in which he stated that he did not intend to testify in his own case, but he wished to testify on behalf of Ritacco, to the effect that he never provided bribes and kickbacks to Ritacco. (*See* Cert. of Frances X. Gartland in Support of a Severance 2, ECF No. 12-6.) When the government learned that Petitioner provided false information in his affidavit, namely that he did in fact pay Ritacco bribes and kickbacks, (*see* Plea Tr. 45:6-46:12, ECF No. 12-2), it charged him with an additional count of perjury. *Gartland*, slip op. at 2-3.

Petitioner eventually pled guilty to all of the aforementioned charges. (Plea Agreement 1-2, Crim. Dkt., ECF No. 58.) As stipulated in the agreement, Petitioner agreed to a recommended total offense level of 37 under the sentencing guidelines. (*Id.* at 11.) That offense level carried with it a recommended sentence of 210 to 262 months. (Plea Tr. 30:7-10.) After conducting a plea hearing, and satisfied that the plea agreement was knowing and voluntary, Judge Pisano accepted the plea agreement. (*Id.* at 48:18-22.)

At sentencing, the government moved for a four-level 5k1.1 departure based on Petitioner's substantial assistance to the government against Ritacco, which would bring his sentence to the same level as Ritacco's. (Sentencing Tr. 7:12:25-18:9, ECF No 12-1.) Defense counsel argued for an even further departure, highlighting Petitioner's alleged recognition of and remorsefulness for his crimes, and his alleged desire to correct his mistakes and right his wrongs. (*Id.* at 18:18-20:24.) Judge Pisano accepted the government's recommendation but rejected defense counsel's argument, finding that Petitioner's willingness to submit a false affidavit was "a futile and, frankly, virtually a pathetic attempt to further complicate and obfuscate and obstruct the prosecution," and that he only agreed to the guilty plea when it was obvious the motion to sever was about to be denied. (*Id.* at 23:24-24:20.) The new sentencing range based on the four-level departure was 135 months to 168 months. (*Id.* at 25:11-12.)

With regard to the mitigating factors, Judge Pisano spent a significant portion of his analysis on Petitioner's advanced age (he was 71-years-old at the time of sentencing) and his prior history of health problems, including prostate cancer (albeit in remission) and vision issues. (*Id.* at 38:15-39:3.) Judge Pisano determined that the Bureau of Prisons was more than capable of seeing to Petitioner's needs due to his age and health. (*Id.* at 39:4-12.) Judge Pisano characterized the matter as "the wors[t] case of public corruption [he had] seen." (*Id.* at 44:1-2.) In addition, Judge Pisano found that there was only "a meager record of mitigating circumstances" and determined that "a sentence below the advisory guidelines range cannot be justified in this case." (*Id.* at 44:9-12.) Nevertheless, due to Petitioner's advanced age, Judge Pisano imposed the guidelines minimum of 135 months. (*Id.* at 44:17-24.) Judge Pisano set the restitution amount for the case at $4,336,987.91 and ordered Petitioner to forfeit $11,880,233.44 in assets. *Gartland*, slip op. at 4.

## II.   **STANDARD OF REVIEW**

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citation omitted). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11-4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545-46).

## III.   **DISCUSSION**

The Motion sets forth four grounds for relief, but the Court construes it as raising three claims: (1) Petitioner's plea agreement was not knowing and voluntary, because counsel had failed to explain to him his sentencing exposure, and that he was coerced into pleading guilty by threats

of prosecution against his family members; (2) counsel failed to file a formal motion for downward departure at sentencing; and (3) counsel provided him with deficient advice regarding his affidavit in support of the motion to sever. The Court addresses each of these below.

### A.    Standard for Ineffective Assistance of Counsel

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (citation omitted). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[1] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.

---

[1] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

### B.    Knowing and Voluntary Plea

Petitioner asserts that his plea agreement was not knowing and voluntary because (1) he was not informed of his sentencing exposure by counsel, which resulted in a plea agreement that likely ensured he would spend the rest of his life in prison, essentially the worst outcome that would have occurred had he gone to trial anyway; and (2) he was coerced into pleading guilty because of the threat of prosecution against his family members. (*See* Pet'r's Br. 8-9, ECF No. 7.) The Court disagrees.

The same two-part *Strickland* standard, described above, is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (citation omitted). The defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

Here, to begin, it is disingenuous for Petitioner to argue that he did not know he was likely to spend the rest of his life in prison. At the time of the plea, Petitioner was 71-years-old with a history of health problems. Essentially, anything but the shortest of sentences would have had a reasonable chance of causing him to "spend the rest of his life in prison." (Pet'r's Br. 6.) The prospect of spending the rest of his life in prison would have been, and should have been, a forethought the moment he was charged and throughout the plea negotiations. As the government appropriately stated at sentencing, "that's simply because Mr. Gartland went on committing crimes

into his late 60s." (Sentencing Tr. 16:7-8.) If Petitioner was expecting extreme leniency by the trial court, he expected wrongly, even though Judge Pisano did in fact impose a lenient sentence.

Furthermore, the record clearly contradicts Petitioner's assertion that he was not informed of his sentencing exposure. In his plea agreement, Petitioner agreed to a stipulated offense level of 37 under the sentencing guidelines. (Plea Agreement 11.) At the plea hearing, Judge Pisano specifically asked whether Petitioner understood that the recommended sentence under the guidelines for that level was 210 to 262 months. (Plea Tr. 30:7-10.) Petitioner responded in the affirmative. (*Id.* at 30:11.) Even if counsel unequivocally failed to inform Petitioner of his sentencing exposure, the plea colloquy cured that deficiency. *See United States v. Fazio*, 795 F.3d 421, 428 (3d Cir. 2015) ("[A]ny possible error in plea counsel's advice to [the defendant] was cured by the plea agreement and at the plea colloquy."). The Court finds that it was reasonable for the judge, the defense counsel, the prosecutor, or any other party involved in the criminal matter to assume that Petitioner was capable of the math required to understand that a 71-year-old man pleading to a sentencing range that *started* at 210 months was almost assured to spend the rest of his life in prison.

As for Petitioner's contention that he was coerced into pleading guilty based on threats to his family members, the Court notes that in his application for permission to enter a plea of guilty, Petitioner acknowledged that:

> I hereby declare that I have not been forced, coerced or threatened in any manner by any person to plead GUILTY to these charge(s). Nor have I been told that if I refuse to plead GUILTY, other person will be prosecuted.

(App. for Permission to Enter Plea of Guilty 6, ECF No. 12-9.) Indeed, Judge Pisano explicitly asked Petitioner at the plea hearing, "[h]as anybody threatened you or made any inducements to you, other than what appear in your plea agreement?", to which Petitioner responded, "[n]o, [Y]our

Honor." (Plea Tr. 17:6-8.) Accordingly, the record contradicts Petitioner's after-the-fact characterization of the circumstances regarding his plea negotiation and agreement.

Regardless, even if the Court assumes Petitioner's allegation that the government threatened the prosecution of his family members as true, this did not violate his constitutional rights. The Supreme Court has cautioned that:

> [t]his is not to say that guilty plea convictions hold no hazards for the innocent or that the methods of taking guilty pleas presently employed in this country are necessarily valid in all respects. This mode of conviction is no more foolproof than full trials to the court or to the jury. Accordingly, we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial. We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves. But our view is to the contrary and is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants' admissions that they committed the crimes with which they are charged.

*Brady v. United States*, 397 U.S. 742, 757-58 (1970). As such, "[t]he Supreme Court has specifically reserved judgment on 'the constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person other than the accused.'" *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 n.8 (1978)). The Third Circuit has not yet provided clarity on how to address the claim that a guilty plea was induced by a threat of prosecution to a third party. Other circuits, however, have held that "[t]he government acts in good faith when it offers leniency for an indicted third party or threatens to prosecute an unindicted third party in exchange for a defendant's plea when the government has probable cause to prosecute the third party." *Miles v. Dorsey*, 61 F.3d 1459, 1468 (10th Cir. 1995) (citing cases from the Second, Seventh, Tenth, and Eleventh Circuits).

Indeed, a prosecutor who "no more than openly presented the defendant with the unpleasant alternatives" of not pleading guilty does not violate due process. *Bordenkircher*, 434 U.S. at 365.

Here, while Petitioner alleges that the government threatened to prosecute his family members who, he claims, were innocent, he does not specify exactly who the government threatened to prosecute, what the government threatened to prosecute them with, or how it lacked probable cause to do so. Instead, the record shows that his family members participated, through Petitioner's direction, in at least one of his schemes. For example, during the plea hearing, the following exchange occurred:

> Q: Between 2005, September, 2005, and November, 2006, in Baltimore, Maryland and elsewhere, did you recruit, both directly and indirectly, approximately ten individuals, including family members and business associates, to contribute to the Vas congressional campaign committee?
>
> A: Yes.
>
> Q: At your direction, did each of these individuals contribute between $2[,]000 [and] $2,001 to the Vas congressional campaign committee?
>
> A: Yes.
>
> Q: Did you reimburse each of these individuals for their contributions to the Vas congressional campaign committee?
>
> A: Yes.

(Plea Tr. 43:14-44:1.) By Petitioner's own admission in open court, Petitioner's family members knowingly and intentionally participated in this election fraud, in violation of the Federal Election Campaign Act. *See* 52 U.S.C. § 30122 ("No person shall make a contribution in the name of another person or *knowingly permit his name to be used to effect such a contribution*, and no person shall knowingly accept a contribution made by one person in the name of another person.")

(emphasis added).[2] Here, the Court is not suggesting that the government's potential case was limited to this one scheme. Rather, the Court is simply utilizing this example to demonstrate how Petitioner has failed to provide factual allegations to establish that the government lacked probable cause to threaten prosecution of his family members, let alone to the level required to establish that the government induced Petitioner into falsely pleading guilty. *See also United States v. Wright*, 43 F.3d 491, 499 n.4 (10th Cir. 1994) (holding that the government can also offer to halt criminal investigations of a third person as a consideration in plea negotiations without threatening prosecution).

The Amended Petition alleges that "[c]ounsel could have put forth a better effort at securing a more favorable plea agreement for Mr. Gartland or should have advised him to go to trial." (Am. Pet. 4, ECF No. 7-1.) It was only in his brief that Petitioner raised the argument that his plea agreement was not knowing and voluntary. Dissatisfaction with the result of counsel's representation is not a ground for an ineffective assistance of counsel claim. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n [ineffective assistance of counsel] analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."); *Kim v. United States*, No. 05-3407, 2006 WL 981173, at *3 (D.N.J. Apr. 4, 2006) ("[T]hat [he] now appears unhappy with the result does nothing to change the fact that there is not the slightest indication that petitioner received ineffective assistance of counsel."). Indeed, if Petitioner was truly dissatisfied with the plea deal counsel negotiated, he had a simple and uncomplicated choice: reject the plea agreement. Petitioner needed no counseled advice to come to that conclusion and make that choice. Petitioner

---

[2] It is difficult to argue that the family members involved had no knowledge of the scheme if they were *reimbursed* for making those campaign contributions.

cannot, on the one hand, argue that he pled guilty out of concerns for his family members' potential exposure, but on the other hand, assert that had he known he would spend the rest of his life in jail anyway, he would have ignored the threats to his family and insisted on going to trial. Petitioner was either coerced by the threats to his family members or he was not—he cannot argue that he was capable of both states of mind simultaneously. Nevertheless, Petitioner established neither of his assertions. Accordingly, the Court denies relief on this ground.

### C.   Failure to Argue Downward Departure

Next, Petitioner asserts that counsel was ineffective because she failed to "file[] formal downward departure motions under Chapter 5 of the U.S.S.G." (Am. Pet. 8.) Specifically, Petitioner argues that counsel failed to file "formal motions . . . pursuant to U.S.S.G. § 5H1.1 and § 5H1.4[.]" (Pet'r's Br. 12-13.) Sections 5H1.1 and 5H1.4 provide guidance regarding sentencing considerations due to a defendant's age and physical condition. *See* U.S. Sentencing Guidelines §§ 5H1.1 & 5H1.4 (2009).[3]

Regardless of whether counsel failed to file a formal downward departure motion, it is clear that Judge Pisano considered Petitioner's age and physical condition. As summarized above, Judge Pisano made detailed findings as to those issues, and imposed the guidelines minimum. There is simply no evidence that counsel failed to adequately argue the mitigating factors at Petitioner's sentencing. To assert that a "formal motion" would have prompted Judge Pisano to consider the mitigating factors of age and physical condition more carefully than he already did on the record is meritless. Therefore, the Court finds that Petitioner did not suffer any prejudice based on this alleged ineffective assistance of counsel claim, and relief is denied.

---

[3] The 2009 version of the sentencing guidelines was the applicable version in Petitioner's criminal case.

### D.     Deficient Advice on Affidavit

Finally, Petitioner argues that counsel provided deficient advice regarding Petitioner's affidavit in support of a motion to sever, which then resulted in him being charged with an additional crime of perjury.  Even assuming, arguendo, that counsel provided inadequate advice, Petitioner suffered no prejudice because the perjury charge was ultimately dismissed.  (*See* J., Crim. Dkt., ECF No. 71.)

Petitioner further argues that Judge Pisano was troubled by his affidavit, and that had Judge Pisano been made aware of counsel's allegedly deficient advice, "surely [it] would have cast a little different light on Mr. Gartland" and resulted in further downward departure. (Pet'r's Br. 14.) Petitioner's allegation is purely speculative.  Furthermore, Judge Pisano's concern was not with counsel's advice or lack thereof, but with Petitioner's history of dishonesty and his willingness to lie.  Indeed, at sentencing, Judge Pisano described in detail the he-said-she-said blame-shifting that Petitioner and his codefendant engaged in against each other even after they had both pled guilty, or as Judge Pisano put it, "[s]o much for honor among thieves."  (Sentencing Tr. 42:6-43:8.)

While a man of Petitioner's character—who cheated, bribed, and defrauded the public for selfish gains—may believe that counsel was required to inform him of the consequences of lying, nothing under the Sixth Amendment required counsel to inform Petitioner of the obvious truth that he should not provide false testimony under any circumstances.  Indeed, the law permits *counsel* to withdraw from representation if she has information to believe that the defendant would perjure himself. *See Nix v. Whiteside*, 475 U.S. 157, 171 (1986).  If Petitioner believed that the statements contained within the draft affidavit were untrue, he should have refused to sign it—it was

Petitioner, not counsel, who was in a position to know the veracity of those statements.[4] The Court is unsure what constitutionally-required advice Petitioner thinks he should have received from counsel. Therefore, the Court finds Petitioner has failed to establish that counsel was deficient, and relief on this ground is denied.

### E. Certificate of Appealability

Lastly, the Court denies a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.    CONCLUSION

For the reasons set forth above, Petitioner's Motion is DENIED and the Court denies a certificate of appealability.

s/ Michael A. Shipp
**Michael A. Shipp**
**United States District Judge**

Dated: 8/11/17

---

[4] Petitioner alleges that the codefendant's counsel, not his own counsel, drafted the affidavit. (Pet'r's Br. 13.)